Good morning, Your Honor. Chris Aberle, court-appointed counsel for Raymond Porter, who is asking this court to vacate his sentence and remand with instructions for the district court to revisit two of its sentencing rulings, one being the denial of his request for a minor role reduction and the other being drug quantity determination. It is our position that the ruling involved a clearly erroneous finding of fact. Now, our challenge to the role in the offense ruling is based on the amendments to the commentary to Guideline 3B1.2, which provides that the fact that a defendant performs an essential or, to get the other word, indispensable role in the criminal activity does not preclude a finding that he has played a mitigating role. Rather, the dispositive question is whether he was substantially less culpable than the average participant in the criminal activity. So it's not dispositive, but here you've got the fact that your client bought heroin, sold heroin, transported heroin, distributed heroin. Why is that not sufficient to defeat the adjustment here? Granting your categorical argument, you know, why does it not satisfy here? Well, first of all, because each of those descriptions of conduct that you describe are subject to interpretation. In other words, if the district court had to make, there's no direct evidence this man did any particular thing. I thought he was found guilty by the jury. To be sure, but we're talking about what did he do. The jury's verdict said he is a member of this conspiracy. That is true. The question then is, what did he do? And the court identified what the court of, the district court said, that he bought and sold heroin with Mr. Guyton and that he bought heroin from Mr. Berry. Now these describe the fact that he's guilty of a crime, but it doesn't assess the question of whether he's substantially less culpable than the average participant. That determination isn't resolved by those findings. Wasn't the district court in a much better position than we are, though, to have made this determination? To be sure. He was not a street level dealer. He's illegally transporting and distributing significant amounts of heroin. Why isn't that enough? Well. I mean, why is he less culpable? What record evidence supports that? The district court is in a better position, but the district court never makes the requisite finding. The district court didn't apply the correct law. She didn't say, well, you're just as guilty as so-and-so or more guilty than someone else. Those determinations were never made. But there, we've said that these can be implicit. Right, but we don't know what's in, we don't know what is involved in the district court's finding. Well, what should the district court have considered that, what in the record should the district court have considered to find the, you know, in the 3B1.2 factors? Well, let's talk about, first of all, we have Mr. Guyton. Well, let's start with Mr. Berry. There is the notion that he, that Mr. Porter received heroin from Mr. Berry. Well, when? When did that happen? It is surmised that on one of the trips when Mr. Berry came back from Houston, he stopped off at somebody's house, ripped open his heroin package, threw the package in the trash, and then drove over to Mr. Porter's house and stayed for five or ten minutes. How, how, we can only guess that there was a, a, a, a transaction that occurred then. For how much? And how many times are we talking about? We're just talking about the one time. And then we have Porter and Mr. Guyton. The only connection in the evidence that supports a transaction is Mr. McKenzie-Weber saying, Mr. Porter, Mr. Guyton told me that T just gave him nine, nine ounces of heroin. He assumes T to be Porter. And then the other, and the only other evidence in the record is the phone call between Mr. Guyton and Mr. Goins, where Mr. Guyton says, T gave me some bad heroin. And again, no one ever said T was Mr. Porter. The jury could make that inference, but, but the district court hasn't made, the jury's verdict says he's a member of the conspiracy, but it doesn't say what he did. And the district court needed to make findings as to what he did, and then say what his relative culpability was. So we think that if you're going to operate on the wrong, the legal standard, one that's much harder to meet, the district court didn't go, didn't go into the depth that it needed to do it, because. What case says that? Which case says? What's your best case that this, this is some failure on the part of the district court such that we should send this back for re-sentencing? Well, it would be Sanchez-Valerio, which held, which holds that the, no case has actually decided that the peripheral, this court's jurisprudence about if you're more than peripheral, you don't get it. But that is plainly inconsistent with the guidelines that say, if you're essential and indispensable, you still might be able to get it. Right. And you bear the burden, your client bears the burden of establishing entitlement, and the court found that Berry and Porter were in constant communication, and that Porter and Guyton, or is it Guyton, had been dealing heroin together, and that he's seeing him right after the heroin run, as you've already told us. Why is this, why he's not peripheral? When you bear the burden. But, but the question isn't whether he's peripheral or not. The question is whether he's substantially less culpable or not. Those are different, by definition. You can't, that, our position is, by definition, if you are not peripheral, then you are definitely not indispensable, and you are definitely not, the, the other word, essential. Then, if you rely on peripheral, you're cutting out a subset of, of people. You said that we haven't embraced the peripheral requirement, if you will. What about Castro? I'm sorry? What about the Castro case? You don't, you don't read Castro to have adopted the peripheral requirement? It certainly seems to have language suggesting that it's a requirement. That, that, that, that the peripheral, that this Court definitely, definitely adopts the peripheral rule. But our point is that, that that has to be revisited in light of the amendments to the, to the guideline commentary. Amendment 794. Yes. And. I believe Castro was decided by this Court after. I would need to look at that. Now, the district, the, the, I, if Castro holds that, it, it, it's obviously going to be inconsistent. The, the language is inconsistent, based on. Oh, I get that you may not like that ruling, and to disagree with it and think we issue for the en banc court rather than for the three of us. If that may be. Counsel, I still, I, I'm not, what evidence did you offer, not you necessarily, but what, what evidence was offered at the re-sentencing or the original sentencing to rebut the district court's findings or otherwise establish that he's somehow less culpable? You don't have to be less culpable. You could all be culpable. We don't make a hierarchy in every case. Sometimes people are just all in there, lumped in there together. No question. So what, what, what evidence did you offer in support of this theory at the sentencing? Well, the, the, the burden, there has to at first be an evidentiary basis asserted for denying it. And then the burden comes to him to, to, to rebut that. We never get that far. He has to prove he's entitled to it. He proves it by saying, look, there, there, there is no, there is no evidence other than the, you know, this inferential contact that he had, where he, where they think he might have distributed some, some heroin. I mean, that's all there is in this case. There was a... Why didn't you do that, or why didn't counsel do that at the sentencing hearing? Well, I, I think that he did, at least in connection, I mean, he, he, he, he threw a bunch of objections out at once, but he, he, he made the argument throughout that he, that actually he wasn't even involved in any criminal activity. And I think that subsumes the argument that his role was a minor role. Now, the district court said, well, hey, you know, we, he's been found guilty. But that doesn't, that determination doesn't preclude the finding, doesn't preclude his argument that he, you know, that there are no transactions where he's actually been caught with drugs. And that is, that, that is a fact. It seems to me you're really challenging the jury's finding of guilt. They found him guilty. The evidence tying him is that he did, was engaged in these transactions. And there was a debate about that, but the jury found him guilty. So then the question just becomes, assuming that conduct that the jury found, is he, is he entitled to this mitigating role? Well, I mean, your basic theory is he did not, what, you, what did he do, what did the jury find him guilty of doing, in your view? Aspiring, being a member of a conspiracy that involved... Based on what conduct? I'm sorry. Based on what conduct that he engaged in? Well, certainly, certainly the verdict doesn't say, and then, and then you have to, you have to look at what evidence there is. And look at the PSR. The pre-sentence report details what the evidence was pertaining to him at trial. And you, it's very reasonable to assume the jury found that conduct. But they'd only had to find one thing though, right? I mean, they'd only had to find that he did one particular thing. So what I'm getting at here is what you're really challenging in large part isn't the application of this guideline as a matter of law. You're challenging whether he was really involved in these transactions, the pre-sentence report said he was engaged. Well, yes, but what we... And that's clear, that's clear error standard. Well, true, but clearly the court, well, clearly... How can it be clear error when there was evidence, there was evidence that the jury actually agreed with that he engaged in those transactions? And, well, let me give you some clear error here. One of the reasons the district court, and this, this goes to our second argument as well. One of the reasons the district court found that he wasn't peripheral was that he bought and sold drugs to Mr. Guyton. Now, I mentioned that, by the way, he did present evidence in the form of a statement that the government has provided that Mr. Guyton says, I didn't deal in any drugs with Mr. Porter. But there is an evidentiary basis for a not implausible finding that he sold drugs to Guyton. It's the McKenzie-Weber testimony and it's the phone call about the bad tea issue. Yeah, right, right. But what there isn't is anything in this record, and the government can correct me if I'm wrong, that says that Mr. Porter bought heroin from Mr. Guyton, and yet there it is, stated in the, in the court's reasoning. There is, there's, you know, as I said, there's at least a burden of coming forth with an adequate evidentiary basis for an allegation, and here there's nothing even in the PSR that says that Mr. Porter bought drugs from Mr. Guyton. And that mitigates the, you know, you know, more on what his, his actual role was. But that also takes me into, in the brief time I have, into the, into the next issue, which is all of the drugs that they attribute to Mr. Porter came from Mr. Berry. All of it. When you, when you consider that there's nothing that says he got drugs from Mr. Guyton, nothing. So, therefore, the probation officer and the district court by adoption is double counting the drugs that are personally attributable to Mr. Porter, with that which they hold foreseeable, which they say is Mr. Berry's drugs. And that's important, because those drugs add up to, well, we're not sure. This court held, when it affirmed this conviction, that it was 2.5 kilograms. That's what the government says. Because if it's, even if it's the 1.25 kilograms directly attributable to Mr. Porter, that's still in the, his 151 sentencing range is still, that's, it doesn't make a difference. Well, three kilograms is the cutoff. But the actual range he got was 2.5 kilograms. Well, isn't that right? You mean if you drop down, if you drop down two points, the 150 is in both hands. Right. If you only gave him what's directly attributable to him, he was not sentenced beyond what could have been the sentence. Even if you agree with you that it's double counted, and we shouldn't, we're double, you know, he got the same heroin, it's being traded back and forth, and it's too much, too much. If you go back down to what he's actually attributed with, the sentence he got. But this Court has never held that at least with an objection, that being sentenced in the wrong guideline range is not a harmless error, even if the sentence falls in both ranges. And particularly where the district court gave, if the district court gives you the, particularly where the district court gives you the bottom of the range, because there's a suggestion that the court would go lower if it could. So that's why we would say that that doesn't, that doesn't make the error harmless. Do you agree that Mr. Porter's counsel at the first sentencing, though, said that there's indication that the drugs are half a kilo? And kind of acknowledge that at the, at the hearing, and so bless that? You're saying at the first sentencing hearing? Yes. And I'm not even sure what that reference is. That's his counsel saying that. Saying what, I'm sorry? That there's some indication that the drugs involved, that they may involve half a kilo, kilogram. Is that? I don't know what that's, from which drugs, what drugs he's talking about. If they're not drugs that came from Barry, which I, as I said, I think all of us know, I'm not sure. Good morning, Your Honors. I'm Sharon Lieberman. I was trial counsel below, and I'm here with Diane Copes, representing the United States. I guess I would like to start with the drug quantity argument briefly, because that's where co-counsel ended. I believe this court's test is one of reasonable foreseeability, and there is no double counting in this case. The PSR went through the different drug transactions that Porter was involved in, came with, up with 1.25, and Porter, there was evidence in the trial and in the PSR that Porter dealt drugs with Guyton. Guyton was a kilo level drug dealer. He also dealt drugs with Barry, who made several back and forth trips to Houston, where he was dealing anywhere from a half to a kilogram level quantities. I think the district court judge, who was in the best position to find the quantity, made the correct determination that it was, he easily was above the three kilogram threshold. Did the district court err in concluding that the drugs purchased by Mr. Barry were reasonably foreseeable to Mr. Porter when none of the communications between Mr. Porter and Mr. Barry involved drugs? Well, and that's not true. That would be totally incorrect. The district court did not err. That's what's argued, and so I'm... Right, of course. Yeah, I understand. One of the counts here was a telephone count, using a communication facility. This court in Haines said that there was sufficient evidence to believe that that conversation involved a drug transaction. So that's in Haines at 736, 737. That's discussed extensively by the court because it was one of the counts of convictions, and in fact, the district court, in discussing it at the third sentencing hearing, said that it belied reason that that conversation wasn't about drugs. It was not about the NBA playoffs. The timing didn't work out. It didn't make sense. He was only there for a couple minutes. He was on his way back from Houston. I mean, just to say that there was, just because there was no drugs on Mr. Porter, the evidence in the case was all about the phone calls that he had with the co-conspirators, the weird times that they occurred. That's all in the trial record, and the judge had all of that before her. In addition, there were four objections that were argued. They were actually argued at the first sentencing hearing, and then there was a different spin. Mr. Roby gave a different spin on them in the second sentencing hearing. The district judge heard all of that. At 2805 to 2809, she went through all these different facts, boom, boom, boom, boom, boom, which kind of dovetails into the next argument in going through all these factors, such as the criminal activity that he was involved in. All of the things that she stated correspond to the non-exhaustive factors in Amendment 794. So right before she denies the amendment, just, I think, a few lines above, this district court says that in considering the drug quantity, she says at 2810, Porter was involved in multiple drug deals with co-conspirators. Porter had constant communications with Barry during trips to Houston. Porter had an intimate awareness of the heroin dealings between Barry and Guyton. Porter had conversations with co-conspirators that revealed the relationship of drug dealing in the past. That was something that, of course, was in the quantity of, was in the context of quantity, but directly corresponds to these factors, like C4 of Amendment 794, which talks about the degree, the nature, and extent of a defendant's involvement in the criminal activity. Then the court goes right into this court's test. She articulates the right test. She says that Porter has the burden to show that he was less culpable than the average participant, and then she engages in this She says, and I'm quoting, at 2811, the district court found the evidence at trial, this is the trial judge saying, the evidence at trial revealed Porter bought heroin from Barry. Barry was a big player. Barry wasn't a peon. Here, Porter's buying on a number of occasions from Barry, and Porter and Guyton supplied each other with heroin. Then she goes on to say that Porter must show to get the enhancement that he was peripheral. He must be peripheral to the illicit activity, and says he wasn't. This is not a drug mule. This is, and this court has said, you know, not every, and I think Judge Elrod mentioned it, not every case has to have the mastermind. Not every case has to have the minor participant. This guy was smack dead in the center. He was just too involved with these higher players. He was supplying Guyton, Mark Guyton, which this court in Haines recognized was a major was a major drug dealer who had a source of supply in Houston. He was buying from Barry, who had a supplier, I mean, sorry, St. Louis was Guyton, Houston was Barry. So I don't know how this guy could ever get around those facts. I think a remand in this case would be futile. I think the judge is going to make the same exact determination if she gets the case back. As far as Judge Ho, your question about Castro, Castro is controlling. It's the prior panel decision here. It was, in fact, post amendment 794. So the court had the opportunity not to use the must-be peripheral language. I think that defense counsel is trying to conflate and say that must-be peripheral is antonymous, you know, to indispensable and essential, but it's really not. They're not opposites because you can be peripheral and essential, just like the drug courier, right? You can be essential and amendment 794 doesn't want district courts to eliminate the amendment for the people, the little peons that are essential, but also peripheral. But Porter was peripheral. He was so close to the center here. He was peripheral. And so the must-be, this court's use of must-be peripheral, there's nothing wrong and it doesn't contravene amendment 794. It's just another way to describe substantially less culpable than the average participant. If you look at those factors. How can you be, I tend to agree that Castro decides this, but just out of curiosity, how can you be essential and peripheral simultaneously? How can you be essential and peripheral? Oh yeah, because. Anyway, I don't get that. Okay, because being peripheral just describes the degree of involvement that you have with reference to the center, just like substantially less culpable to the average participant. It's all, they're all but you could be essential, like as a drug courier, like the the drug organizations cannot operate without the little people that are willing to risk getting arrested on the front lines. But just a drug courier, if he just in a one-time transaction brings the drugs in from Mexico or whatever, he may not know all the other players, so he's still peripheral. Or like in this case, we had someone and this person didn't, was a girlfriend and didn't qualify for a minor role because she ended up pleading to a lesser charge, but a girlfriend who rents a car for somebody in the drug conspiracy is part of the drug conspiracy because without her, you know, they need to use cars that are anonymous. These rental cars, they can't rent cars themselves because they have drug convictions. That person could be essential because you need someone to help you do these things so you can be anonymous, but also be peripheral. I don't know if that answers your question. I'm just trying to think of some examples, but I guess it's a sort of debate about what peripheral means. My notion was that if you're essential, essentially sort of your but-for cause of the conspiracy, it can be small. It could be relatively on lack of culpability, but if it's but-for, I'm not sure you're peripheral, but I guess it depends on what you mean by peripheral, I suppose. Right, and what we'd argue here is that in the way this court has been using it, and Castro actually, it really answers the question here. It says it's improper for the court to award the adjustment simply because the defendant does less. They must do enough less of their best peripheral, so I think that answers the question to say that peripherality, as this court is using it, is how far away the person is from the center. That they still could be essential link in the chain of causation, but just far away from the center of the action, and it's a very factually determinative analysis, right? So it's hard to give an example, except I keep falling back to this drug mule, because the court has used it. It's come up in Sanchez, and Sanchez, the problem with denying the adjustment in that case was that the judge made everything hinge on how critical that person was and didn't discuss any other factors, but that's not what we have here. We have the court using the substantially less culpable framework, discussing factors that are relevant to the 794 factors, and then she was a trial judge. She had the PSR in front of her. There were at least three people that had less culpability than Mr. Porter, and at least three people that have arguably greater culpability than Porter. He was right there in the middle, and the judge, again, went through all these facts that she found. It's not like there weren't arguments about these facts. Defense counsel, in making the argument for the adjustment, argued actual innocence, which suggests he had no knowledge and all these things. The court rejected it. She looked at it. She was thinking, no, this belies reason. No, I heard this. It doesn't make sense. Even the stuff about guidance. She was like, no, I'm hearing it. So what is on remand? What are they going to argue that they didn't already argue? I don't know. And so, your honors, I just, if, you know, I would just conclude, if there are no further questions, that Porter failed to carry his burden. This was his burden to show that he was less culpable than the average participant. The district court didn't err. It's, the record is what it is, and Haines certainly is what it is, and made certain findings as well, that the court, the court would actually be wrong to have given the enhancement here, I think it's fair to say. And so, if the court has no further questions, the government will rest on its brief and ask the court to affirm the district court's decision on both of the grounds. Thank you, counsel. We have your argument. Just, just to sort of try to restate the position on the minimum parole, the, the court found him to be not peripheral. It didn't say he wasn't relatively a minor. There is evidence in the record for the court didn't, I'm not saying it had to, it wasn't forced to come to that conclusion, but there's reason to do so, and the court didn't assess it under the proper law, and therefore missed the opportunity to find that he was substantially less culpable, and, and the reason, what those are, and these, I think you can say that counsel made these arguments. He, there's one time where Barry comes to his house. Now, nobody really knows what happened there. Nobody, there's an assumption that there was some drugs transferred. Okay. The court could have found that, that there was, you know, an ounce or whatever. Meanwhile, Guyton, Guyton's a big drug dealer, but if, if, if Mr. Porter's given him nine ounces of drugs on one occasion, and Mr. Guyton's getting all of his drugs from the rest of the world, Houston, Haines, Henderson, et cetera, that makes Guyton, Porter's role vis-a-vis Guyton much smaller, and finally, there's nothing to, I don't think that awareness and constant communication are measures of culpability, knowing of, of course, that Mr. Barry and Mr. Porter were great friends who, who managed the basketball team together, and knowing that, believe it or not, there was a hundred thousand phone calls intercepted, and not a one had any drug content in it. There's the suggestion that, that, you know, come over to my house means, come over to my house and trade drugs. These are reasons for this court to conclude that no matter what Mr. Barry, what Mr. Porter knew was going on, that he still played a substantially less of role in this gigantic case that involved much, much more than Mr. Porter. I mean, all you have to do is just do a name search in the PSR of the, of the ten pages of offense conduct, offense conduct, and you'll see his name pop up like, like two times. This, the point being that there is a basis for that, and Castro, I realize I did say Castro in the brief. The problem with Castro is it doesn't, we would argue that it doesn't constitute a holding. It did, it did make the peripheral finding in a post-amendment case, but the issue was never raised as to, as to there being an inconsistency between those, the amendments and the, and the peripheral rule. Thank you. Thank you, counsel. We have your argument, and we know that your court.